RANDY S. GROSSMAN
Acting United States Attorney
DANIEL C. SILVA (Cal. Bar No. 264632)
MARK W. PLETCHER (Colorado Bar No. 034615)
LISA J. SANNITI (Ohio Bar No. 86670)
CARL F. BROOKER, IV (Wash. D.C. Bar No. 1022908)
Assistant United States Attorney
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-9713
Email: Daniel.C.Silva@usdoj.gov

JOSEPH S. BEEMSTERBOER
Acting Chief
KEVIN LOWELL (Maryland Bar)
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, D.C. 20530
Telephone: (202)262-7795
Email: Kevin.Lowell@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.  21-CR-2542-TWR |
| v. | JOINT MOTION FOR INTERLOCUTORY SALE OF CYRPTOCURRENCY |
| GLENN ARCARO, | |
| Defendant. | |

The United States of America by and through its attorneys, and Mary Carter Andrues, attorney of record for Defendant, Glenn Arcaro, hereby jointly move pursuant to Federal Rule of Criminal Procedure 32.2(b)(7) and Federal Rule of Civil Procedure Supplemental Rule G(7) for an order authorizing the immediate interlocutory sale of the cryptocurrency proceeds of criminal activity subject to criminal forfeiture in this case.

/ / /

/ / /

/ / /

### A. Summary of Joint Motion

The cryptocurrency at issue in this case were held in 20 separate cold storage devices or cryptocurrency online platforms that were controlled by Defendant; all of which were transferred into the possession and control of the United States, as detailed below, and referred to collectively herein as the "Subject Assets." Based on the evidence collected in this case, Defendant's admissions in his plea agreement, and the stipulation below, the Parties jointly submit that the Subject Assets are property constituting, or derived from, proceeds Defendant obtained directly or indirectly, as the result of his violation of Title 18, United States Code, Section 1349. The following cryptocurrency are the Subject Assets this joint motion seeks authority to sell:

| Coin/Token Type | Amount Cryptocurrency Coin/Tokens Transferred |
|---|---|
| DASH | 54.61638918 |
| LTC | 121.4374899 |
| BTC | 325.4121239 |
| BTC | 70.48458255 |
| LTC | 700 |
| BTC | 435.8506725 |
| BTC | 46.1869929 |
| LTC | 1895.855808 |
| DASH | 183.8153162 |
| NEM | 66669.75 |
| NEO | 167 |
| NEO | 2820 |
| BAT | 167123.9004 |
| BTC | 0.00363334 |
| DASH | 0.15269929 |
| ETH | 46.47270272 |
| LTC | 14.99436945 |
| OMG | 3307.580268 |
| BTC | 0.6863152 |
| BTC | 0.908286991 |

The Parties stipulate below to the entry of an order authorizing the interlocutory sale of the Subject Assets, whereupon net proceeds of the sale shall become substitute assets (the "Substitute Assets") instead and in place of the Subject Assets, for all purposes, including future restitution and forfeiture proceedings.

**B. Factual Background**

As admitted in Defendant's plea agreement, from on or about January 2017 to in or about January 2018, BitConnect operated a global cryptocurrency Ponzi scheme that defrauded retail investors of approximately $2 billion. Defendant reported no less than $24 million in income from his participation in the BitConnect fraud on his 2017 U.S. individual income tax return.

BitConnect managers, owners, agents, affiliates, and promoters made materially false and misleading statements, and omitted material facts, in order to induce investors to invest in BitConnect or otherwise purchase and invest in BitConnect's cryptocurrency coin, the BitConnect Coin ("BCC"). Text messages, marketing materials, videos, investor interviews, and statements made by cooperating witnesses all support this conclusion. The Subject Assets are proceeds of the BitConnect Ponzi scheme.

On September 1, 2021, in the Southern District of California, Defendant pleaded guilty to an information charging him with one count of conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349. Dkt. No. 2. As a part of his plea agreement, which was entered at the same time, Defendant agreed to forfeit any property involved in the offense and to pay restitution to the victims of the fraud. In furtherance of this forfeiture, Defendant, in earnest, has transferred to the government, cryptocurrency proceeds and investments well in excess of the $24 million in income from his participation in the BitConnect fraud as reported on his 2017 U.S. individual income tax return, for purposes of the restitution fund.

On October 12, 2021, the United States filed an unopposed motion for alternate victim notification due to the "extraordinary number of victims in this case, and the

corollary burden of contacting (or even identifying) all of them." Dkt. No. 15. The Court granted this motion on October 12, 2021. Dkt. No. 18.

Pursuant to the terms of the Plea Agreement, and all addenda thereto, on October 26, 2021, Defendant surrendered all of his cryptocurrency assets to Special Agents from the United States Postal Inspection Service ("USPIS") in the form of the Subject Asset cryptocurrencies held by Defendant. Thus began the process of victim restitution and forfeiture of any funds in excess of those paid to victims of the fraud. The Subject Assets are currently held in cryptocurrency wallets under the control of the USPIS.

Upon entry of the Court's interlocutory sale order, the USPIS will sell the cryptocurrency and hold the proceeds as fiat currency—U.S. dollars. The USPIS will then utilize these Substitute Assets to provide restitution to victims of the BitConnect fraud pursuant to a future restitution order by this Court at sentencing. Any Substitute Assets remaining after paying restitution to the victims in this case will be forfeited to the United States pursuant to a forfeiture order by this Court at sentencing.

**C. Discussion**

This Court is authorized to "take any . . . action to preserve the availability of property" subject to forfeiture. 21 U.S.C. § 853(e)(1). Here, the entirety of the Subject Assets is subject to forfeiture pursuant to the explicit terms of the Plea Agreement's Financial Addendum. Dkt. No. 6 at 28. Rule 32.2(b)(7) of the Federal Rules of Criminal Procedure provides that "[a]t any time before entry of a final order of forfeiture, the court, in accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure, may order the interlocutory sale of property alleged to be forfeitable."

Supplemental Admiralty and Maritime Claims Rule G(7)(b) of the Federal Rules of Civil Procedure ("Rule G(7)") provides that, on motion by a party or person having custody of the property, a court may order the interlocutory sale of all or part of the property subject to a pending asset forfeiture action under certain conditions. Specifically, an interlocutory sale may be ordered if (1) the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending action; (2) the

expense of keeping the property is excessive or is disproportionate to its fair market value; (3) the property is subject to a mortgage or to taxes on which the owner is in default; or (4) the court finds other good cause. Rule G(7)(b)(i). Any such interlocutory sale must be made by a United States agency that has authority to sell the property, by the agency's contractor, or by any person that the court designates. Rule G(7)(b)(ii).

Due to the extremely volatile nature of cryptocurrency, its risk of rapid deterioration in value, and other good cause including the necessity of making victim's whole in a "full and timely" way for their losses (18 U.S.C. § 3771(a)(6)), the Parties request that this Court order the interlocutory sale of the Subject Assets.

**D. Stipulation**

The Parties hereby stipulate and agree as follows:

Defendant represents that he is the sole owner of the Subject Assets, has exercised sole dominion and control over the entirety of the Subject Assets since coming into possession of them. Defendant represents that the Subject Assets are property constituting, or derived from, proceeds Defendant obtained directly or indirectly, as the result of his violation of Title 18, United States Code, Section 1349 through his participation in the BitConnect fraud.

Upon entry of the proposed order, the United States shall have the authority, in its sole discretion, to liquidate any portion or all of the Subject Assets for U.S. dollars. The United States represents that it will endeavor in good faith to obtain a reasonable exchange rate and incur reasonable sale and transaction fees in the course of liquidating the Subject Assets. Defendant waives any objection to the exchange rate obtained and fees incurred as to each and every sale of the Subject Assets, and the manner and timing of each such liquidation; however, nothing in this joint motion shall prevent Defendant from receiving the benefit of the value transferred upon the date of transfer and/or the date of the sale (whichever is greater). The United States shall maintain records of each sale reflecting the value of the Subject Assets liquidated at the time of the transaction, the exchange rate, any fees or costs incurred (described more specifically below), and the net proceeds of

liquidation. The United States shall provide this information to counsel for Defendant within ten days of liquidation.

The net proceeds from liquidation of the Subject Assets shall be determined by calculating the gross proceeds less actual costs of sale, sales commissions, and other actual costs and expenses incurred by the United States in liquidating the Subject Assets.

The net proceeds of the liquidation shall be held in the custody of the United States Postal Investigative Service as Substitute Assets instead and in place of the Subject Assets, for all purposes, including future restitution and forfeiture proceedings. Any and all claims and defenses of the United States, Defendant, and any other potential claimant to the Subject Assets shall apply equally to the Substitute Assets.

Defendant represents that he has the authority to enter into this Stipulation regarding the Subject Assets.

This Stipulation constitutes the entire agreement between the Parties on the matters contained herein, and no other statement, promise or agreement, either written or oral, made by either Party or agent of either Party shall be considered part of the agreement.

DATED: November 12, 2021

RANDY S. GROSSMAN
Acting United States Attorney

/s/ *Carl Brooker*
Daniel C. Silva
Mark W. Pletcher
Lisa J. Sanniti
Carl F. Brooker, IV
Assistant U.S. Attorneys

JOSEPH S. BEEMSTERBOER
Acting Chief

/s/ *Kevin Lowell*
Kevin Lowell
Trial Attorney

/s/ *Mary Carter Andrues*
(with authorization)
Mary Carter Andrues
Attorney for Defendant Glenn Arcaro

<u>Signature Authorization</u>

I certify the above-listed Defendant's attorney is aware of the contents of the motion and has authorized me to sign on her behalf.

DATED: November 12, 2021  /s/ *Carl Brooker*
CARL BROOKER, IV
Assistant U.S. Attorney