LORINDA I. LARYEA
Acting Chief
KEVIN LOWELL (Maryland Bar)
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, D.C. 20530
Telephone: (202)262-7795
Email: Kevin.Lowell@usdoj.gov

RANDY S. GROSSMAN
United States Attorney
MARK W. PLETCHER (Colorado Bar No. 034615)
LISA J. SANNITI (Ohio Bar No. 86670)
CARL F. BROOKER, IV (Wash. D.C. Bar No. 1022908)
Assistant United States Attorney
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8811
Email: Lisa.J.Sanniti@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br> v. <br><br> GLENN ARCARO, <br><br> Defendant. | Case No. 21-CR-2542-TWR <br><br> UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM <br><br> Date: September 16, 2022 <br> Time: 9:30 a.m. |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, LORINDA I. LARYEA, Acting Chief, Kevin Lowell, Trial Attorney, and RANDY S. GROSSMAN, United States Attorney, Lisa J. Sanniti, Special Assistant U.S. Attorney, Mark W. Pletcher, and Carl Brooker, Assistant U.S. Attorneys, and hereby files its Sentencing Memorandum pursuant to Federal Rules of Criminal Procedure, Rule 32, and Local Rules of Practice for the United States District Court for the Southern District of California, Rule 32.1, for defendant GLENN ARCARO ("Defendant").

The United States recommends that the Court impose a sentence on Defendant of: 44 months of custody; 3 years of supervised release; no fine; forfeiture and restitution to be determined at a later hearing; and a special assessment of $100.

In a separate motion, the parties are seeking an order setting the restitution hearing for approximately 90 days from sentencing.

## I. STATEMENT OF THE CASE

On September 1, 2021, the United States filed a single-count Information charging Defendant GLENN ARCARO with conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 1349. Doc. No. 1 (the "Information"). On the same day the Information was filed, Defendant entered a Plea Agreement and pleaded guilty admitting to the charges contained in the Information. Doc. No. 6 (the "Plea Agreement"). The Plea Agreement included a financial addendum, wherein the parties agreed that the amount of restitution will be no less than $24,098,333, and to the forfeiture of $24,098,333. Id.

Within the Plea Agreement, Defendant waived the right to appeal and to collaterally attack every aspect of the conviction and sentence, including restitution and forfeiture, provided that the Defendant is not sentenced above the high end of the Guidelines range recommended by the United States, and received effective assistance of counsel. Id., at X.

## II. STATEMENT OF RELEVANT FACTS

Section II.B. of the Plea Agreement states the operative facts. In summary, between January 2017 and January 2018, Defendant conspired with others and BitConnect to operate a global cryptocurrency Ponzi scheme that defrauded investors of over $2 billion through investments in BitConnect's "Lending Program."

BitConnect paid commissions to Defendant and other promoters who successfully convinced investors to invest in the Lending Program. Defendant served as BitConnect's "national promoter" in the United States from in or about August 2017 to 2018 and was responsible for managing a team of U.S.-based promoters for BitConnect. Defendant

earned a percentage, as much as 15%, of every investment that was made into the Lending Program through his network of promoters. To persuade investors to invest, Defendant and other promoters posted videos to their social media pages that contained materially false and misleading statements about the profits that they could earn from investing in BitConnect's Lending Program. Defendant served as one of the most prolific and successful promoters of BitConnect. Satish Kumbhani, the BitConnect Founder, supervised and directed Defendant.

To reward promoters for luring investors, BitConnect paid promoters additional income from a fund known as the Development Fund, which was essentially a slush fund of investors' money. Promoters could use these funds to market BitConnect and for the national promoters' personal use. Kumbhani directed national promoters to conceal the Development Fund from the public. Defendant directed promoters in his network to conceal and mislead potential investors about the Development Fund. As a result of Kumbhani's, Defendant, and other promoters' concealment of the Development Fund, investors did not know that up to 15% of their investment was being syphoned into the Development "slush" Fund and not invested as promised by BitConnect.

Between January 2017 and January 2018, Defendant received no less than $24 million in income from his participation in the BitConnect fraud scheme.

### III. GUIDELINES CALCULATION

#### A. Total Offense Level

The base offense level for violating Title 18, United States Code, Section 1949 is 7 (USSG § 2B1.1(a)(2)). Based on Defendant's financial gain being over $9.5 million, the offense level is increased by 20 (USSG § 2B1.1(K)). Two levels are added because there were more than 10 victims, and the scheme used mass-marketing (USSG § 2B1.1(b)(2)(A)). Lastly, two levels are added because Defendant had an aggravating role in the scheme (USSG § 3B1.1(c)).

The United States requests that Defendant receive a three-level downward adjustment under USSG § 3E1.1(a) for his acceptance of responsibility. The United

3

States also recommends an additional one-level downward adjustment based on a combination of circumstances that are present to a substantial degree, but not entirely or adequately taken into consideration by the USSG (USSG § 5K2.0)). More specifically, the first circumstance is that Defendant entered into the Plea Agreement at an early stage of this investigation and during the COVID-19 pandemic. The second circumstance is that Defendant turned over to the Government a substantial amount of cryptocurrency, saving Government resources.

Finally, the Government has filed under seal its request for an additional 5-level reduction to Defendant's Guidelines.

Therefore, the United States calculates Defendant's Total Offense Level at 22.

### B. Custodial Sentence

Because Defendant has no criminal history, his Guideline sentencing range at an adjusted offense level of 22 is 41-51 months. The statutory maximum custodial sentence for this offense is 20 years. In the Plea Agreement, the United States agreed to recommend a sentence within the advisory Guidelines range. The United States therefore recommends a sentence of 44 months in custody, to be followed by 3 years of supervised release.

### C. Supervised Release

The Court may impose a statutory maximum 3-year term of supervised release. Title 18, United States Code, Section 3583(b)(2). The United States concurs with the PSR's recommendation for a 3-year term of supervised release, along with probation's recommended conditions of supervision. Doc. 37 ¶ 163.

### D. Fine

Pursuant to USSG § 5E1.2(c)(3), an offense level of 22 calls for a fine range of $15,000 to $150,000. Title 18, United States Code, Section 3571(b)(3) caps the maximum fine for this offense at $250,000. The Guidelines lay out factors the Court should consider when imposing a fine, including the need for the combined sentence to reflect the seriousness of the offense and promote respect for the law. USSG § 5E1.2(d).

In light of Defendant forfeiting cryptocurrency in an amount far beyond the proposed restitution owed to the bona fide victims, the United States recommends no fine be imposed.

## IV. TITLE 18, UNITED STATES CODE, SECTION 3553 FACTORS

The ultimate sentence must be sufficient, but no greater than necessary, to satisfy the purposes and factors set forth in Title 18, United States Code, Section 3553(a). While the Court has an obligation to consider the Guidelines, the USSG calculation is simply one factor when determining an appropriate sentence. *United States v. Booker*, 534 U.S. 220, 257 (2005). Nothing in Section 3553 suggests that the Guidelines are to be given any greater weight that their fellow sentencing factors. *United States v. Zavala*, 443 F.3d 1165, 1171 (9th Cir. 2006). Instead, the Guidelines act as a "starting point" for the District Court." *United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006).

### A. The Nature and Circumstances of the Offense and the Characteristics of the Defendant

The offense is extremely serious. For nearly two years, Defendant conspired with others to engage in a cryptocurrency Ponzi and Pyramid scheme, defrauding hundreds of investors in the United States and abroad of over $2 billion. The BitConnect scheme is believed to be the largest cryptocurrency fraud ever charged criminally.

Other considerations are that Defendant has no criminal history and has taken steps to right his wrongs. In particular, Defendant turned over to the Government approximately $39 million in cryptocurrency. These funds will go directly to the victims, and the remainder will be forfeited to the Government.

### B. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect of the Law, and to Provide Just Punishment

The recommended sentence here will ensure that Defendant appreciates the seriousness of his conduct, and the harm his conduct caused the victims.

### C. The Need for the Sentence Imposed to Afford Adequate Deterrence

The recommended sentence is significant enough to not only deter Defendant from

5

committing fraud in the future, but it will deter others from engaging in the same conduct. Cryptocurrency is an area ripe for fraud. Those tempted to prey on people by misrepresenting the likelihood of success of the investment or how the investment is actually applied will know that they will face serious consequences.

### D. Kinds of Sentences Available

<u>Probation/Imprisonment</u> – The United States calculates Defendant's adjusted offense level as 22, placing him within Zone D of the Guidelines Sentencing Table. Given the serious nature of the offense, the Guidelines contemplate a sentence of imprisonment. USSG § 5C1.1(f)).

<u>Restitution and Forfeiture</u> – The United States seeks restitution and forfeiture from Defendant. However, the parties are requesting that a restitution hearing be calendared for approximately 90 days after the sentencing hearing pursuant to Title 18 U.S.C. § 3664(d)(5) for the reasons set forth in the Joint Motion to Continue Restitution and Forfeiture. The United States has been processing the enormous number of potential victim claims to determine who are bona fide victims, and providing notifications to victims as required by the Victims' Rights and Restitution Act and Crim Victims' Rights Act. The FBI and U.S. Attorney's Office received nearly 5,000 claims from potential victims from approximately 95 countries including the United States. The FBI has had to vet each claim by requiring proof of loss verifiable on the blockchain. As of the date of this filing, victims are still sending Victim Impact Statements claiming to have suffered a loss. Therefore, the United States is requesting a restitution hearing 90 days from sentencing in order to finish vetting victims' claims to determine the final restitution number by individual victim. The United States will then seek a forfeiture order for the amount remaining from the funds Defendant has turned over.

//
//
//
//

## IV. CONCLUSION

For the reasons stated above, the United States recommends that the Court impose a sentence for Defendant of: 44 months' custody; 3 years of supervised release; no fine; forfeiture and restitution to be determined at a later hearing; and a special assessment of $100.

DATED: September 2, 2022

Respectfully submitted,

RANDY S. GROSSMAN
Acting United States Attorney

*/s/ Lisa J. Sanniti*
Lisa J. Sanniti
Special Assistant U. S. Attorney
Mark W. Pletcher
Carl F. Brooker, IV
Assistant U.S. Attorneys

LORINDA I. LARYEA
Acting Chief

*/s/ Kevin Lowell*
Kevin Lowell
Trial Attorney