RANDY S. GROSSMAN
United States Attorney
CARL F. BROOKER, IV (Wash. D.C. Bar No. 1022908)
MARK W. PLETCHER (Colorado Bar No. 034615)
LISA J. SANNITI (Ohio Bar No. 86670)
DAVID RAWLS (Wash. D.C. Bar No. 974620)
Assistant United States Attorney
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-9713
Email: carl.brooker@usdoj.gov

GLENN S. LEON
Chief
KEVIN LOWELL (Maryland Bar)
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, D.C. 20530
Telephone: (202)262-7795
Email: Kevin.Lowell@usdoj.gov

Attorneys for the United States

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| UNITED STATES OF AMERICA, Plaintiff, v. GLENN ARCARO, Defendant. | Case No.: 21-CR-2542-TWR<br><br>UNOPPOSED MOTION FOR RESTITUTION ORDER, PRELIMINARY ORDER OF FORFEITURE, AND FOR DIRECT NOTICE OF FORFEITURE BY EMAIL<br><br>Date: January 12, 2023<br>Time: 1:30 p.m. |
|---|---|

## I. INTRODUCTION

The United States moves, pursuant to 18 U.S.C. § 3663A, for an Order of restitution in the amount of $17,647,801 to the victims of Defendant's fraud. Restitution is mandatory to victims for certain crimes, including fraud and deceit, and is required here for Defendant's conviction of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. 18 U.S.C. § 3663A(c)(1)(A)(ii). This motion is based largely on the analysis of victim impact statements conducted by Federal Bureau of Investigations Special Agent Monica Hantz. Included with this motion is a proposed Restitution Order granting the

parties' request, and the declaration of Federal Bureau of Investigation Special Agent Monica Hantz ("Hantz Decl.").

The United States also moves the Court to enter a Preliminary Order of Forfeiture for a forfeiture money judgment in the amount of $24,098,333 and the forfeiture of $21,250,364.78, which constitutes the remainder of the funds forfeited by Defendant and not applied to the victims' restitution as set forth below, as collection of Defendant's forfeiture money judgment. Defendant consented in his plea agreement to the forfeiture allegations in the Information and the forfeiture of all property seized in this case, and agreed to the entry of a forfeiture money judgment of at least $24,098,333. Defendant agreed in his plea agreement to forfeiture under 18 U.S.C. § 982(a)(2)(A) and 28 U.S.C. § 2461 of such property constituting and derived from proceeds Defendant obtained, directly and indirectly, as the result of his violation of 18 U.S.C. § 1349. Defendant further agreed in his plea agreement to the entry of orders of forfeiture for such property.  As set forth below, the United States seeks to forfeit and apply the remaining approximately $21,250,364.78 in funds in the United States' possession to Defendant's forfeiture money judgment that has not been allocated to the victim restitution order based on the procedures set forth below.

Defendant Glenn Arcaro, by and through his counsel, Mary Cater Andrues does not oppose this motion for entry of a Restitution Order and Preliminary Order of Forfeiture.

## II.   STATEMENT OF FACTS

### A.   Wire Fraud Conspiracy and Plea Agreement

Defendant was charged by Information with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. ECF 1. The Information charges that between as early as in or around 2017, and continuing through at least in or around 2018, in the Southern District of California and elsewhere, Defendant and others knowingly and intentionally combined, conspired, and agreed to commit wire fraud, in violation of Title 18, United States Code, Section 1343, that is, to execute and attempt to execute a scheme and artifice to defraud investors and potential investors in BitConnect, a cryptocurrency investment platform, and

to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to cause the interstate transmission of wire communications for the purpose of executing that scheme. *Id.*

Defendant admitted in his Plea Agreement that, "[f]rom in or about January 2017 to in or about January 2018, BitConnect operated a global cryptocurrency Ponzi scheme that defrauded retail investors of over $2 billion through investments in BitConnect's 'Lending Program.'" ECF 6, p. 3, ¶ B(1).

Defendant agreed in the Financial Addendum to his Plea Agreement for the Court to order restitution to the victims of his conspiracy under 18 U.S.C. § 3663A. *Id.* at p. 25, ¶ A(1). There, Defendant agreed that,

> [t]he amount of restitution ordered by the Court may include restitution to any person directly harmed by Defendant's criminal conduct in the course of the scheme, conspiracy, or pattern of conduct described in the Factual Basis statement in Section 11.B in the Plea Agreement. If agreed to by the parties, the Court may also order restitution to persons other than the victims of the offense of conviction. Restitution may include losses arising from counts dismissed and charges not prosecuted, as well as all relevant conduct in connection with those counts and charges, if agreed to by the parties.

*Id.* at ¶ A(2).

As stipulated in the Financial Addendum to his Plea Agreement,

> [t]he parties estimate the amount of restitution will be no less than $24,098,333 for victims of Count 1. Defendant understands that this is only an estimate based on currently available information. The United States will recommend restitution of at least $24,098,333, but the amount it ultimately recommends may be higher depending on information at sentencing. The Court may impose restitution of any amount based on information available at sentencing.

*Id.* at ¶ A(3).

The Financial Addendum to his Plea Agreement also provides that Defendant "consents to the forfeiture allegations of the Information and agrees to forfeit, via entry of a personal money judgment against Defendant, in the amount of at least $24,098,333." *Id.* at p. 28, ¶ B(12). Defendant agreed that,

3

[t]he money judgment against Defendant represents monies subject to forfeiture to the United States as property constituting, or derived from, proceeds Defendant obtained directly or indirectly, as the result of the violation of 18 U.S.C. § 1349 and is subject to forfeiture estimate the amount of restitution will be no less than $24,098,333 for victims of Count 1. Defendant understands that this is only an estimate based on currently available information. The United States will recommend restitution of at least $24,098,333, but the amount it ultimately recommends may be higher depending on information at sentencing. The Court may impose restitution of any amount based on information available at sentencing.

B.  **FBI's Analysis of Victim Impact Statements**

Since October 12, 2021, more than 5,000 potential victim investors have been identified by the Federal Bureau of Investigation. *See* Hantz Decl. ¶ 6. The FBI has conducted a detailed review of all of the potential victim investors in order to determine proof of loss. Simply, the FBI required proof that the potential victim sent money from a cryptocurrency wallet they controlled to a BitConnect wallet. Any deposits into BitConnect would then be reduced by any provable withdrawals from BitConnect before its implosion.

The FBI received a grand total of 5,308 submissions of potential victims to their BitConnect website. After removal of duplicate submissions and invalid email addresses, a total of 4,493 potential victims have been added to the Victim Notification Service maintained by the United States Attorney's Office.

In sum, to ensure a maximum number of victims were included in the potential loss pool the FBI was as over-inclusive as possible in their vetting process. Unfortunately, only 797 victims of the 4,493 potential victims were able to surmount the very low bar of proof required by the FBI to be included in the proposed Restitution Order hence the delta between potential victims and vetted victims.

### III.  RESTITUTION LAW

Restitution on behalf of victims of federal crimes is authorized under 18 U.S.C. § 3553(a)(7), and is considered mandatory under 18 U.S.C. § 3663A(c)(1)(A)(ii) for offenses committed by "fraud or deceit," such as this one. Losses that a defendant must repay are those suffered by "a person directly and proximately harmed as a result of the commission

of an offense . . . including, in the case of an offense that involves as an element of a scheme, conspiracy, or patter of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern." 18 U.S.C. § 3663A(a)(2).

Restitution either may be agreed upon or proven by the Government. "The government bears the burden of proving that a person or entity is a victim for purposes of restitution, and or proving the amount of the loss." *United States v. Gossi*, 608 F.3d 574, 579 (9th Cir. 2010) (citations and internal quotations omitted). However, the basis for an amount of restitution need not be proven to a jury beyond a reasonable doubt. *See United States v. Green*, 722 F.3d 1146, 1149-51 (9th Cir. 2013) (holding that *Southern Union Co. v. United States*, 132 S. Ct. 2344 (2012) does not extend the *Apprendi* doctrine to restitution, based on circuit precedent and the fact that there is no statutory maximum penalty for restitution). Instead, restitution orders can and should be based on a preponderance of the evidence. "Under 18 U.S.C. § 3664, a dispute as to the proper amount of restitution must be resolved by the district court by a preponderance of the evidence." *Gossi*, 608 F.3d at 579 (citing *United States v. Waknine*, 534 F.3d 546, 556 (9th Cir. 2008)). This burden is typically met through victim impact statements. *See Waknine*, 543 F.3d at 558-59 ("[V]ictim affidavits will generally provide sufficient, reliable evidence to support a restitution order.").

Exactitude is not required; instead, in ordering restitution, the Court must simply make a "reasonable estimate of the loss, given the available information." *United States v. Ali*, 620 F.3d 1062, 1074 (9th Cir. 2010) (quoting *United States v. Bussell*, 504 F.3d 956, 960 (9th Cir. 2007)).

The calculation of "loss" under the Sentencing Guidelines and "loss" under the restitution statutes may differ, and for good reason. "The different method of calculating loss in each case is due to the different purposes behind the two statutes. A defendant's culpability will not always equal the victim's injury." *Gossi*, 608 F.3d at 579-80 (quoting *United States v. Catherine*, 55 F.3d 1462, 1464-65 (9th Cir. 1995)). "Restitution clearly

5

focuses on the victim, not the individual defendant. Restitution seeks to compensate the victim for all the direct and proximate losses resulting from the defendant's conduct, not only for the reasonable foreseeable losses." *Id.* at 581.

### IV. ARGUMENT

The FBI was able to determine that of the 4,493 potential victim investors, that 797 victims are owed $17,647,801 in restitution. *See* Hantz Decl. ¶¶ 7-16. As a part of Defendant's plea agreement, Defendant agreed the Court would order restitution to the victims of his offense pursuant to 18 U.S.C. § 3663A. *See* ECF No. 6, p. 25, ¶ A(1). As stipulated in the Plea Agreement, "[t]he parties estimate the amount of restitution will be no less than $24,098,333 for victims of Count 1." *Id.* at ¶ A(3). Defendant further agreed that he "understands that this is only an estimate based on currently available information." *Id.* at ¶ A(3). Moreover, per the Plea Agreement, "[t]he United States will recommend restitution of at least $24,098,333, but the amount it ultimately recommends may be higher depending on information at sentencing." *Id.* And "[t]he Court may impose restitution of any amount based on information available at sentencing." *Id.*

Defendant agreed that, "[t]he amount of restitution ordered by the Court may include restitution to any person directly harmed by Defendant's criminal conduct in the course of the scheme, conspiracy, or pattern of conduct described in the Factual Basis statement in Section II.B in the Plea Agreement." *Id.* at ¶ 2.

This includes,

> namely, wire fraud, in violation of 18 U.S.C. § 1313, to wit: [Defendant] executed and attempted to execute a scheme to defraud BitConnect investors and potential BitConnect investors and to obtain money or property by means of false or fraudulent pretenses, representations, or promises, through use of interstate wire communications, within the Southern District of California and elsewhere, all in violation of 18 U.S.C. § 1349.

*Id.* at p. 13-14, ¶ 71. Defendant also agreed, he could stipulate with the United States for the Court to order restitution to persons other than the victims of the offense of conviction. *Id.* at p. 15, ¶ 2.

The persons included in the proposed Restitution Order are "victims," meaning these persons directly and proximately harmed as a result of the commission of the offense for which restitution may be ordered. *See* 18 U.S.C. § 3663(a)(2). Nonetheless, the Court may also order restitution to persons other than the victims of the offense of convictions, and that any and all of the persons included in the proposed Restitution Order also constitute those other persons.

## V. FUTURE FORFEITURE PROCEEDINGS FOR REMAINING FUNDS

After entry of the Restitution Order, the United States requests that the Court order a forfeiture money judgment in the amount of $24,098,333million against Defendant. The $24,098,333million money judgment represents the remaining funds that were not applied to restitution. The United States also moves to forfeit the $21,250,364.78million in U.S. currency that the United States is in possession of in order to satisfy Defendant's forfeiture money judgment. The United States further requests that the Court allow for notice of forfeiture by email to the thousands of third parties who may seek to file a petition in the forfeiture ancillary proceedings. The same reasons supporting the United States' Unopposed Motion For Alternative Victim Notification (ECF 15) for restitution proceedings also support providing notice by email in these forfeiture proceedings. Email is appropriate due to the sheer volume of sending direct notice to over 4,486 victims and potential petitioners in this case who are located in more than 90 countries. Email is also necessary for many of these victims and potential petitioners because the United States does not know their physical addresses. The United States has submitted a proposed Preliminary Order of Forfeiture to govern these forfeiture proceedings, including notice of forfeiture by email.

A. **$24,098,333 Million Forfeiture Money Judgment**

Defendant consented to the forfeiture allegations in the Information and agreed to a forfeiture money judgment in his plea agreement. Defendant stipulated that he "agrees to forfeit, via entry of a personal money judgment against Defendant, in the amount of at least $24,098,333." ECF 6, (Financial Addendum) p. 4, ¶ B(12). Defendant agreed that,

> [t]he money judgment against Defendant represents monies subject to forfeiture to the United States as property constituting, or derived from, proceeds Defendant obtained directly or indirectly, as the result of a violation of 18 U.S.C. § 1349 and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(2)(A).

*Id.* at B(13).

Defendant also agreed to the entry of a preliminary order of forfeiture in his plea agreement by as he "consents and agrees to the immediate entry of an order of forfeiture upon entry of the guilty plea." *Id.* at B(15).

The United States seeks to forfeit and apply the remaining approximately $21,250,364.78 in funds in the United States' possession to Defendant's forfeiture money judgment. Defendant initially transferred such funds to the United States in the form of about $56 million in cryptocurrency. *See* ECF 19, 20, 26, 27 – Joint Motions and Order, Amended Order for Interlocutory Sale. The cryptocurrency was then sold and converted into U.S. currency pursuant to the Orders for Interlocutory Sale and Joint Motions of the Parties. *Id.* Defendant stipulated in the Joint Motion for Interlocutory Sale of Cryptocurrency that all the cryptocurrency he transferred was "property constituting, or derived from, proceeds Defendant obtained directly or indirectly, as the result of his violation of Title 18, United States Code, Section 1349." ECF 19, p. 2.

Defendant agreed in the plea agreement to the forfeiture of these converted funds as "any and all other property" which may be collected and "property wherever it is held" to satisfy his forfeiture money judgment. ECF 6, p. 25, ¶ B(14); p. 30, ¶ B(21). The Plea Agreement further provides,

> Defendant further agrees that the conditions for the substitution of assets for the full amount of the money judgment as set forth in 18 U.S.C. § 982(b) which incorporates 21 U.S.C. § 853(p) exist, and the United States may execute and collect the judgment against any and all other property up to the full amount of the forfeiture judgment."

*Id.*

B. **Notice of Forfeiture To Over 5,000 Third Parties/Victims**

The United States will provide notice by publication and requests to send notice by email to third parties of its intent to forfeit the $21,250,364.78million in funds as part of Defendant's forfeiture money judgment. The third parties to be noticed of forfeiture are the *same* third parties/victims who the United States has already provided notice of restitution.

1. **Notice of Forfeiture By Publication**

The United States will use www.forfeiture.gov to "publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct." 21 U.S.C. § 853(n)(1). "Publication must take place as described in Supplemental Rule G(4)(iii) of the Federal Rules of Civil Procedure, and may be by any means described in Supplemental Rule G(4)(a)(iv)." *Fed. R. Crim. P.* 32.2(6)(C). Supplemental Rule G(4)(iv)(C) provides that the United States may publish "notice on an official internet government forfeiture site for at least 30 consecutive days." *Fed. R. Civ. P. Supp. R. G*(4)(iv)(C*)*.

2. **Direct Written Notice of Forfeiture**

The United States "may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified." 21 U.S.C. § 853(n)(1). The United States will "send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding." *Fed. R. Crim. P.* 32.2(6)(C). Such "notice may be sent in accordance with Supplemental Rule G(4)(b)(iii)-(v) of the Federal Rules of Civil Procedure." *Fed. R. Crim. P.* 32.2(6)(D). Supplemental Rule G(4)(b)(iii)(A) requires that "notice must be sent by means reasonably calculated to reach the potential claimant." *Fed. R. Civ. P. Supp. R. G*(4)(b)(iii)(A). Supplemental Rule (G)(v) specifies that "[n]otice by the following means is sent on the date when it is placed in the mail, delivered to a commercial carrier, or sent by electronic mail." *Fed. R. Civ. P. Supp. R. G*(4)(b)(iii)(A).

### 3. Direct Written Notice of Forfeiture by Email Is Appropriate

The United States requests that the Court allow for direct written notice to be sent by email to approximately 5,000 potential claimants who may seek to file a petition under 21 U.S.C. § 853(n) alleging an interest in the $21,250,364.78 forfeited by Defendant. Written notice by email complies with the rules and statutory requirements because it is "reasonably calculated to reach the potential claimant[s]" who accessed and showed proficiency with the internet and email to purchase the cryptocurrency. *Fed. R. Civ. P. Supp. R. G*(4)(b)(iii)(A). Notice by email is appropriate as it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (Jackson, J.).

Here, sending email notice is the quickest and most effective means of providing notice of forfeiture to approximately 5,000 potential petitioners located in over 90 countries. Notice by email is also necessary because the United States simply does not have physical addresses for many of these potential petitioners. *Id.* These same factors supporting the United States' Unopposed Motion For Alternative Victim Notification for restitution also support notice by email to third parties in the forfeiture proceedings. ECF 15, 18.

Courts have approved email notice of forfeiture for internet proficient individuals located internationally. Notice of forfeiture by "email was an appropriate form of notice under these circumstances because the case involves international defendants whose locations are hard to pin down and the nature of the crimes necessarily entails some degree of cyber-proficiency on the part of the" property owners. *United States v. Twenty-Four Cryptocurrency Accounts*, 473 F. Supp. 3d 1, 4 (D.D.C. 2020); *United States v. $429,900.00 of Blocked Funds*, 2021 WL 5050070, *6 (D.D.C. Nov. 1, 2021) (same) (quoting *Twenty-Four Cryptocurrency Accounts,* 473 F. Supp. 3d at 4). Notice by email and publication on www.forfeiture.gov "satisfy Supplemental Rule G's notice requirements." *United States v. FaceMaskCenter.com*, 2021 WL 1578294, *4 (D.D.C.

April 22, 2021); *United States v. 155 Virtual Currency Assets*, 2021 WL 1340971, *5 (D.D.C. April 9, 2021) (same)).

The Ninth Circuit has approved of plaintiff's service by email of a non-forfeiture civil lawsuit to a defendant, a foreign internet business entity. *See Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). The Ninth Circuit determined "not only that service of process by email was proper—that is, reasonably calculated to apprise [defendant] of the pendency of the action and afford it an opportunity to respond—but in this case, it was the method of service most likely to reach [defendant]." The Court found email service particularly appropriate where the defendant's business was strictly online with "neither an office nor a door; it had only a computer terminal." *Rio*, 284 F.3d at 1018. In approving of email service, the Ninth Circuit noted that "the Constitution does not require any particular means of service of process, only that the method selected by reasonably calculated to provide notice and an opportunity to respond." *Id.* (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (Jackson, J.).

Other courts have since allowed service of civil lawsuits by email and even twitter and Facebook as well. *See, e.g.*, *Fed. Trade Comm'n v. PCCare247, Inc.*, 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) (permitting service to the defendants by both email and Facebook, because it was reasonably calculated to provide defendants with notice"); *Juicero, Inc., v. Itaste Co.*, 2017 WL 3996196, at *3 (N.D. Cal. June 5, 2017 (service via email and Facebook); *St. Francis Assisi v. Kuwait Finance House*, 2016 WL 5725002, at *2 (N.D. Cal. Sep. 30, 2016) (service via Twitter*);*

For the foregoing reasons, sending direct notice of forfeiture by email is appropriate here.

**C.  Third Parties/Victims Must Prove Interest by Preponderance of The Evidence**

The United States gave ample opportunity and tried to include as many victims as possible in the restitution order. These *same* third parties/victims will have the opportunity to file a petition under 21 U.S.C. § 853(n) and seek to prove a qualifying interest in the forfeitable funds. The United States anticipates it will oppose petitions filed by victims

11

who are included in the restitution order because such victims will already have been made whole through restitution and would not have traceable qualifying interests in the forfeitable funds under 21 U.S.C. § 853(n)(6). Moreover, the third parties/victims who did not provide sufficient evidence of loss for restitution are not relieved of doing so under these forfeiture proceedings. Rather, in the forfeiture ancillary proceedings the petitioner *bears the burden of proof* to demonstrate their interest by a preponderance of the evidence. *See* 21 U.S.C. § 853(n)(6); *United States v. Nava*, 404 F.3d 1119, 1125 (9th Cir. 2005) ("The Petitioner bears the burden of proving his right, title, or interest under § 853(n)(6)").

Federal Rule of Criminal Procedure 32.2(c) allows third parties to file petitions asserting interests in property that has been found to be subject to forfeiture in a preliminary order of forfeiture. The ancillary proceeding to adjudicate third party petitions is governed procedurally by 21 U.S.C. § 853, which allows for only two avenues of relief under 21 U.S.C. § 853(n)(6), requiring that a petitioner show by a preponderance of the evidence that either:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of of the commission of the acts which gave rise to the forfeiture of the property under this section; or
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of the purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

21 U.S.C. § 853(n)(6).

All of the 4,486 potential third parties/victims notified of restitution will also be notified of the forfeiture action in this case by publication. The United States requests that the Court Order for the United States to provide direct written notice of forfeiture by email to the 4,486 potential third parties/victims.

## Conclusion

The United States respectfully moves this Court to enter the proposed Restitution Order, proposed Preliminary Order of Forfeiture, and direct written notice of forfeiture by email according to the terms set forth in the orders.

DATED: January 6, 2023

                                                      Respectfully submitted,
                                                     RANDY S. GROSSMAN
                                                     United States Attorney

                                                     */s/ Carl Brooker*
                                                     Carl F. Brooker, IV
                                                     Mark W. Pletcher
                                                     Lisa J. Sanniti
                                                     David Rawls
                                                     Assistant U.S. Attorneys

                                                     GLENN S. LEON
                                                     Chief

                                                     */s/ Kevin Lowell*
                                                     Kevin Lowell
                                                     Trial Attorney

                                                     */s/ Mary Carter Andrues*
                                                     (with authorization)
                                                     Mary Carter Andrues
                                                     Attorney for Defendant Glenn Arcaro